**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-3293

RYAN BROWN and MARGARGET GAY, on behalf of themselves and M.B., their minor child,

      Plaintiffs,

v.

SCHOOL DISTRICT 49,
DUSTIN HORRAS, in his individual and official capacities,
PETER HILTS, in his individual and official capacities,
BRAD MILLER, in his individual and official capacities,
CASSI MACARTHUR, in her individual and official capacities,
SHERI BARON, in her individual and official capacities,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiffs, by and through their attorneys Andy McNulty, Mari Newman, and Madeline Leibin of NEWMAN | MCNULTY, LLC, respectfully allege as follows:

**INTRODUCTION**

1.      On May 4, 2023, M.B., a ten-year-old Black child, went to school. M.B. attended Remington Elementary School ("Remington Elementary"), which is in El Paso County Falcon School District 49 ("School District 49").

2.      M.B. greeted one of his friends, who is also Black, saying "What's up brah?" M.B. greeted his friend in the presence of his teacher, Sheri Baron, who is White. Defendant Baron immediately, racistly censured M.B., saying something to the effect of "Oh no, we're not going to have any of that gang talk at school."

1

3.      M.B. was rightfully very upset by his racist discipline by Defendant Baron. So were his parents, Ryan Brown and Margaret Gay. And they would have more to be outraged about: when they spoke out against the racism inflicted on their son, School District 49 further discriminated against them by casting their righteous protestations into racist tropes and meeting them with *armed* security.

4.      Furthermore, in the months following their son's treatment and in response to their legally protected advocacy about ongoing issues in School District 49, officials in School District 49 retaliated against Mr. Brown and Ms. Gay by severely constricting their ability to communicate with School District 49 personnel, including in relation to absolutely innocuous items, such as their son's participation on a basketball team.

5.      The Colorado Civil Rights Division ("CCRD") found, twice, that School District 49 and its officials, discriminated, and retaliated against M.B. and his parents based on their race and opposition to racial discrimination.

6.      Mr. Brown and Ms. Gay, on behalf of themselves and their minor son, M.B., bring this lawsuit to hold Defendants — School District 49 and its officials, in their individual and official capacities — accountable for their flagrant violations of their federal and state constitutional and statutory rights.

## JURISDICTION AND VENUE

7.      This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. §§ 1983 and 1988.

8.      Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 2201, and 1367.

9.      Jurisdiction supporting Plaintiffs' claim for attorney's fees is conferred by and brought pursuant to 42 U.S.C. § 1988.

10.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b), because all of the events alleged herein occurred within the State of Colorado, and all of the Parties were residents of the State at the time of the events giving rise to this Complaint.

## PARTIES

11.     Plaintiffs —Mr. Brown and Ms. Gay, on behalf of themselves and their minor son, M.B. — have been citizens of the United States and residents of, and domiciled in, the State of Colorado at all times relevant to the subject matter of this litigation.

12.     School District 49 is a public school system located in El Paso County that is funded, in part, by El Paso taxpayers.

13.     Defendant Dustin Horras was the Superintendent of the Sand Creek Zone of School District 49 at all times relevant to the allegations in this complaint (and, previously, was the Principal of Horizon Middle School). He is a resident and domiciled in the State of Colorado. Defendant Horras is vested with authority to make operational decisions on behalf of School District 49 and to implement School District 49's policies and procedures. At all times relevant, Defendant Horras was acting under color of state law and in his capacity as Superintendent.

14.     Defendant Peter Hilts is the Superintendent for all of School District 49. He is a resident and domiciled in the State of Colorado. Defendant Hilts is vested with authority to make operational decisions on behalf of School District 49 and to implement School District 49's policies and procedures. At all times relevant, Defendant Hilts was acting under color of state law and in his capacity as Superintendent.

15.    Defendant Brad Miller is counsel for School District 49. He is a resident and domiciled in the State of Colorado. At all times relevant, Defendant Miller was acting under color of state law and in his capacity as counsel for School District 49.

16.    Defendant Cassi MacArthur is the principal of Remington Elementary. She is a resident and domiciled in the State of Colorado. At all times relevant, Defendant MacArthur was acting under color of state law and in her capacity as principal of Remington Elementary.

17.    Defendant Sheri Baron is a teacher at Remington Elementary. She is a resident and domiciled in the State of Colorado. At all times relevant, Defendant Baron was acting under color of state law and in her capacity as a teacher at Remington Elementary.

## FACTUAL ALLEGATIONS

### M.B. was racistly disciplined by Defendant Baron.

18.    In May of 2023, M.B. was ten years old. M.B. likes to draw, play basketball, and practice martial arts. He and his family — Mr. Brown, Ms. Gay, and his little sister — like to build Legos, including of Harry Potter and Star Wars characters and buildings. M.B. and his family are Black. M.B. was an engaged and successful student. He enjoyed attending school and his family put a strong emphasis on obtaining a quality education.

19.    On May 4, 2023, M.B. went to his school, Remington Elementary.

20.    While M.B. was moving between classes, M.B. greeted one of his friends by saying "What's up brah?" M.B. said this in the presence of his teacher, Defendant Baron, who is a White woman.

21.    Defendant Baron, upon hearing this greeting from M.B., racistly told M.B. something to the effect of "Oh no, we're not going to have any of that gang talk at school." The

only reason that Defendant Baron associated M.B., who was ten years old and had never been associated with a gang in any way, with criminality, was because he is Black boy.

22.     M.B. was hurt, and felt confused and let down by Defendant Baron. Defendant Baron's racist comment made M.B. extremely upset.

23.     When M.B. arrived home after shool, he told his parents about Defendant Baron's racist discipline of him.

24.     M.B.'s parents were appalled and upset. They believed it was imperative that their son was removed from a learning environment where he would be subjected to such racism. Additionally, they felt concern that their daughter Amaya, who would be starting kindergarten the next year, would be treated similarly within School District 49.

25.     Mr. Brown went to Remington Elementary on Monday, May 8, 2023, to voice his concerns. He spoke with the principal, Defendant MacArthur, a White woman, about Defendant Baron's racist discipline of his son. Defendant MacArthur told Mr. Brown that she would investigate what happened and follow up with him.

26.     Mr. Brown requested that his son be immediately moved out of Defendant Baron's classroom. He did not want his son to be subjected to daily racism in a learning environment. Defendant MacArthur verbally agreed to move M.B. from Defendant Baron's classroom. Defendant MacArthur told Mr. Brown that it would take a day to make the arrangements, so Mr. Brown took M.B. home early.

27.     The next day, on May 9, 2023, Defendant MacArthur sent an email to Mr. Brown admitting that Defendant Baron made the racist remark. Nevertheless, she told Mr. Brown that she would not move M.B. out of Defendant Baron's classroom.

28.     Deeply concerned for their son's well-being, Mr. Brown and Ms. Gay went to Remington Elementary to speak with Defendant MacArthur that day. During that conversation, Mr. Brown and Ms. Gay reiterated that they wanted their son moved out of Defendant Baron's classroom. They also told Defendant MacArthur that Defendant Baron should be terminated for her racism.

29.     Following this discussion, Defendant MacArthur again verbally told Mr. Brown and Ms. Gay that M.B. would be moved out of Defendant Baron's classroom for the remainder of the year. Mr. Brown and Ms. Gay left the school satisfied that their child would no longer have to endure racism from Defendant Baron.

**Mr. Brown and Ms. Gay were discriminated and retaliated against when they spoke out about their son's discriminatory treatment.**

30.     The next morning, at 7:36 a.m. on May 10, 2023, just minutes before the school day was to start for M.B., Defendant MacArthur sent an email to Mr. Brown telling him that, contrary to their agreement the day before, M.B. would remain in Defendant Baron's classroom for the remainder of the year. In that email, Defendant MacArthur took her first step in retaliating against Mr. Brown and Ms. Gay by telling them that they if they disagreed with this decision, they would have to schedule all future meetings with any staff member of Remington Elementary via phone and could not come to the school to speak with her without an appointment.

31.     Defendant MacAruther did not impose the restriction on coming to the school to speak without an appointment on, or enforce it against, White parents or parents who had not spoken out in opposition to the racist treatment of their children.

6

32.     Mr. Brown did not see the email from Defendant MacArthur before taking M.B. to school because it was sent mere minutes before the school day at Remington Elementary was scheduled to start.

33.     When Mr. Brown arrived at Remington Elementary, he decided to walk M.B. into the school to ensure that he was going to be moved out of Defendant Baron's classroom. When Mr. Brown entered the school with M.B., he was immediately confronted by Defendant MacArthur, who was holding a printed copy of her email, and was accompanied by an armed security guard.

34.     Defendant MacArthur would not have confronted Mr. Brown with an armed security guard if he were White. If Mr. Brown had been supportive of School District 49, or spoke about any other content, he would not have been confronted with an armed security guard. Upon information and belief, Defendant MacArthur has not previously, and has not since, confronted White parents who wish to speak with her with armed security guards. Mr. Brown understood that presence of an armed security guard to be a form of intimidation and show of force by School District 49 and Defendant MacArthur in response to his advocacy for the well-being and fair treatment of his Black child.

35.     When Mr. Brown was confronted with the armed security guard and told that M.B. would not be moved from Defendant Baron's classroom, Mr. Brown took M.B. home. Mr. Brown would not force M.B. to endure being subject to further racist discipline from Defendant Baron. Because of Defendants' actions, M.B. missed the last two weeks of school. Missing these last two weeks of school was difficult for M.B as he missed all of the end-of-year activities and presentations that he worked tirelessly to build up to duing the entire school year. M.B. also

missed the end-of-year celebrations that were meant to reward his hard work throughout the year.

36.    After being confronted with an armed security guard, Mr. Brown did not return to Remington Elementary School, or other School District 49 property, for the purpose of speaking out about the racist treatment his son endured or otherwise petitioning School District 49 to redress his grievances. The use of an armed guard chilled Mr. Brown from continuing to speak on School District 49 property directly to School District 49 officials.

37.    The next day, May 11, 2023, Mr. Brown sent an email to Defendant Baron, Defendant MacArthur, and former Superintendent Sean Dorsey. In that email, Mr. Brown protested Defendant Baron's racist discipline of his son, as well as Defendant MacArthur's use of an armed security guard to intimidate, and retaliate against, him. Mr. Brown's email on May 11, 2023, was a petition to his government to redress specific grievances that he had with School District 49's treatment of himself and his son.

38.    In conjunction with his email on May 11, 2023, Mr. Brown also submitted a grievance through the process established by District No. 49. The formal grievance submitted by Mr. Brown was a petition to his government to redress specific grievances that he had with School District 49's treatment of himself and his son.

39.    In response to that grievance, an investigation was conducted by Defendant Hilts. Defendant Hilts found that Defendant Baron used racist language. However, instead of concluding that Defendant Baron should face formal consequences for her racist conduct, Defendant Hilts immediately shifted and focused on Mr. Brown. In an act of abject retaliation and racism, Defendant Hilts accused Mr. Brown of being sexist by addressing Defendant MacArthur by her first name rather than title and referring to other women as "Mrs." rather than

"Ms." Defendant Hilts, incredulously, compared Defendant Baron's racist comments as somehow similar to Mr. Brown's interactions with Defendant MacArthur. In reality, Defendant MacArthur had always addressed Mr. Brown and Ms. Gay by their first names and, in response to Defendant MacArthur's use of this casual language, Mr. Brown and Ms. Gay referred to Defendant MacArthur by her first name. Defendant Hilts did not find that Defendant MacArthur's use of Mr. Brown's and Ms. Gay's first names was racist or sexist.

40.     In a letter to Mr. Brown and Ms. Gay, Defendant Hilts concluded that he agreed with every action taken by Defendant Baron and Defendant MacArthur. Defendant Hilts ratified the conduct by Defendant Baron and Defendant MacArthur, including the decision to refuse to move M.B. from Defendant Baron's classroom and Defendant MacArthur's decision to confront Mr. Brown with an armed security guard.

41.     Ultimately, Defendant Baron was never disciplined for her racist treatment of M.B. Ms. MacArthur was not disciplined for her racism or retaliation against Mr. Brown and Ms. Gay, either. And, Mr. Brown's and Ms. Gay's request that M.B. be removed from Defendant Baron's classroom was never honored. Defendant Hilts made the ultimate decision to condone Defendant Baron's racism.

42.     When Mr. Brown and Ms. Gay realized that M.B. would be forced to remain under the supervision of, and subject to discipline by, a racist teacher, they were forced to remove M.B. from Remington Elementary. Mr. Brown submitted a Notice of Intent to Homeschool with School District 49. M.B. was disappointed that he was not able to continue at Remington Elementary with his friends.

43.     Because M.B. faced unmitigated racism from officials at School District 49, and Mr. Brown and Ms. Gay were subjected to ongoing retaliation when they complained about the

racism at School District 49, Mr. Brown and Ms. Gay were forced to homeschool M.B. They no longer feel comfortable sending M.B. to school in  School District 49 because they cannot trust School District 49 officials to not subject their son to racism or protect him from racism.

**Mr. Brown and Ms. Gay continue to face retaliation because they spoke out about their son's discriminatory treatment.**

44.     In the months following the incident, M.B. and his parents have continued to suffer retaliation for their complaints about School District 49's racist actions.

45.     On February 7, 2024, Defendant Horras informed all members of the Horizon Middle School staff, where M.B. participates in some extracurricular activities while being homeschooled, to no longer communicate with Mr. Brown. Defendant Horras told Mr. Brown that the only person he could contact about any matters that related to School District 49 in any way was Defendant Miller.

46.     Defendant Horras made the decision to prohibit all staff from communicating with Mr. Brown because Mr. Brown protested the racist treatment of M.B., objected to School District 49's racist and retaliatory investigation, and otherwise was critical of School District 49 and Defendant Horras' actions personally. If Mr. Brown had been supportive of School District 49, or spoke about any other content, he would not have faced retaliation in this form of severely constricted communications with School District 49 personnel.

47.     Mr. Brown responded to this email and protested Defendant Horras' decision to bar him from communicating with anyone at School District 49. Defendant Horras refused to respond to Mr. Brown's email and, instead, Defendant Miller responded with an email that did not address Mr. Brown's protestations.

48.     On March 11, 2024, Defendant Hilts conspired with Defendant Horras and Defendant Miller to further retaliate against Mr. Brown and Ms. Gay for their protestations of the

racism faced by M.B. and their petitions to School District 49 to rectify the racism that M.B. faced. Specifically, Defendants Hilts, Horras, and Miller conspired to prevent Mr. Brown from being able to communicate with anyone at School District 49. To this end, Defendant Hilts emailed all relevant School District 49 personnel mandating they not respond to Mr. Brown's communications without direct approval and oversight by Defendants Hilts and Miller, and instructed them to tell all School District 49 staff in their chain of comman of this mandate.

49.     Treating Mr. Brown as a threat that must be barred from communicating with School District 49 personnel further plays into racist caricatures that Black people who advocate for their children must be treated as threatening and aggressive. If Mr. Brown was a White person, he would not have been barred from communicating with School District 49 personnel.

50.     Defendants Hilts, Horras, and Miller did not prohibit similarly situated White parents from communicating with School District 49 personnel. Defendants Hilts, Horras, and Miller made the decision to prohibit all staff from communicating with Mr. Brown because is Black, had protested the racist treatment of M.B., objected to School District 49's racist and retaliatory investigation, and otherwise was critical of School District 49 and their actions personally. If Mr. Brown had been supportive of School District 49, or spoke about any other content, he would not have faced retaliation.

51.     On multiple occasions since Defendants Hilts, Horras, and Miller conspired to prevent Mr. Brown from being able to communicate with anyone at School District 49 on March 11, 2024, Mr. Brown has tried to contact School District 49 personnel, only to be directed to Defendant Miller. Because of this directive Mr. Brown has been prevented from communicating with M.B.'s basketball coach at Horizon Middle School (where M.B. continued to participate in extracurricular activities despite being homeschooled). Communication regarding matters as

innocuous as scheduling and fees have been blacklisted, left unanswered, and/or forwarded to Defendant Miller. This, in turn, has negatively affected M.B.'s extracurricular experiences. And it has chilled and stifled Mr. Brown's ability to be an advocate for his child and within their community.

52.    To this day, Mr. Brown is barred from openly communicating with School District 49 officials outside of Defendants Hilts and Miller.

53.    If Mr. Brown had been supportive of School District 49, or spoke about any other content, he would not have faced the retaliation of being banned from speaking to School District 49 personnel.

54.    Mr. Brown and Ms. Gay have previously advocated within School District 49 about a myriad of topics. They followed School District 49 school board meetings and engaged with School District 49 leadership. In particular, they have criticized School District 49's use of funding, especially given its status as a Title I federal funding recipient. They regularly speak out about the underfunding of extracurricular activities for schoolchildren and for teacher pay, including in public fora like Facebook.

55.    As a part of Mr. Brown and Ms. Gay's advocacy within School District 49, Mr. Brown has sought public records through Colorado Open Records Act requests. Due to Defendants Hilts, Miller, and Horras' retaliatory undercutting of his ability to communicate with School District 49 personnel, Mr. Brown has been prevented by School District 49 officials from obtaining public records in the same manner as other concerned citizens and parents, particularly other White parents.

**<u>The Colorado Civil Rights Division found that Defendants School District 49, MacArthur, and Baron discriminated against M.B. and his parents, on multiple occasions.</u>**

56.     An investigation of Defendant Baron's racist discipline of M.B. was conducted by the Colorado Civil Rights Division ("CCRD"). On April 5, 2024, the CCRD found that Defendant Baron's actions gave rise to an inference of unlawful discrimination, as M.B. could not have enjoyed School District 49's services in the same manner as similarly situated students not of his protected class. It also concluded that School District 49's racist and retaliatory so-called "investigation" did not address the incident with the attention and discipline it duly warranted.

57.     In a separate investigation, on April 5, 2024, the CCRD further found that School District 49's has substantially restricted Mr. Brown's communications to School District 49 personnel, which constitutes retaliation. It also found that that substantial restriction has effectuated further discrimination and denial of full and equal enjoyment of a place of public accomodation.

58.     Mr. Brown and M.B. have been issued a notice of right to sue from the CCRD and otherwise satisfied all other jurisdictional prerequisites with respect to claims under the Colorado Anti-Discrimination Act.

### **Defendant School District 49 has a long history of racism, discrimination, harassment, retaliation, and condoning racism, discrimination, harassment, and retaliation.**

59.     In 2010, School District 49 was forced to enter into a consent decree with the United States Department of Justice ("DOJ") following years of racist harassment and discrimination within School District 49 and by School District 49 officials, as well as completely deficient policies and procedures within School District 49 regarding race harassment and discrimination,which allowed discrimination harassment to run rampant.

60.     School District 49 abjectly failed to comply with the 2010 consent decree, in the following ways:

    a.  School District 49 was failing to keep copies of all written documentation related to incidents of racist harassment and discrimination, including written reports and complaints, interview notes, witness statements, corresponsence with parents and guardians, and prior documentation of harassment and discrimination.

    b.  School District 49 did not have a policy that goverened the investigations of incidents of racist harassment and discrimination and had no policy that provided adequate protections to students ubject to racist harassment and discrimination.

    c.  School District 49 failed to have a system of graudated discipline for incidents of racist harassment and discrimination.

    d.  School District 49 failed to provide adequate training to its staff on racist discrimination and harassment.

    e.  School District 49 had inadequate monintoring systems in place to track racist discrimination and harassment by its students and officials.

    f.  Overall, School District 49's policies and procedures failed to meet its obligations under Title VI.

61.     As a result, of School District 49's failure to compy with the 2010 consent decree, racist harassment and discrimination continued unabated within School District 49 and by School District 49 officials.

62.     In 2014, because of School District 49's non-compliance with the 2010 consent decree, the DOJ School District 49 to enter into another consent decree with the purpose of

eradicating the ongoing and widespread racist harassment and discrimination within School District 49 and by School District 49 officials.

63.    Upon information and belief, racist harassment and discrimination continues unabated within School District 49 and by School District 49 officials.

**Defendant School District 49's customs, policies, and/or practices caused the violations of M.B.'s, Mr. Brown's, and Ms. Gay's rights.**

64.    Upon information and belief, per its customs, policies, and practices, School District 49 ultimately concluded that the actions its officials took with respect to M.B., Mr. Brown, and Ms. Gay were in compliance with School District 49 policies, customs, and practices.

65.    It has long been the custom and actual practice of School District 49 to ratify and condone racism and retaliation by School District 49 officials.

66.    Defendants Baron and MacArthur were not meaningfully disciplined for their actions. Further, upon information and belief, School District 49 did not provide any additional training to Defendants Baron and MacArthur, or any other School District 49 officials, related to the incident with M.B or the retaliation and discrimination against Mr. Brown and Ms. Gay.

67.    Indeed, demonstrating School District 49's customs, policies, and practices, no School District 49 officials interceded to stop the ongoing discrimination and retaliation against Mr. Brown and Ms. Gay; instead, final policymakers for School District 49, including Defendants Horas, Hilts, and Miller, ratified — and themselves perpetuated — the retaliation and discrimination.

68.    This subsequent acceptance of discrimination and retaliation by School District 49 shows its preexisting custom, policy and practice.

69.    Defendants' treatment of M.B., Mr. Brown, and Ms. Gay was engaged in pursuant

to School District 49's custom, policy and/or practice of unlawful conduct, including but not limited to condoning and ratifying discriminatory treatment of children and retaliation against those who speak out against discrimination.

70.    School District 49 has a longstanding, widespread, and deliberately indifferent custom, habit, practice, and/or policy of condoning and ratifying discrimination and retaliation. As a result, it has become customary among School District 49 officials to discriminate and retaliate because School District 49 has communicated to its officials that such discrimination and retaliation is authorized and, indeed, expected, and when used will be defended by the supervisory, municipal, and legal apparatus of School District 49.

71.    It is the longstanding, widespread, and deliberately indifferent custom, habit, practice, and/or policy of School District 49 to fail to supervise and train School District 49 officials regarding the rights of individuals to be free from discrimination and retaliation. This custom, policy, and/or practice has led to School District 49 officials, on a regular basis, discriminating and retaliating.

72.    School District 49's violation of M.B.'s, Mr. Brown's, and Ms. Gay's constitutional rights, standing alone, is sufficient evidence of School District 49's customs, policies, and/or practices because its officials acted an egregious manner openly and in front of multiple other School District 49 officials without other officials repudiating any of their actions in the slightest. This demonstrates that School District 49 officials are trained and expected to act in the same way that the individual Defendants in this case acted.

73.    School District 49 knew or had constructive knowledge, based on its long history and widespread practice, of its officials engaging in discrimination and retaliation.

74.    In light of this knowledge, School District 49 could and should have pursued

reasonable training for and supervision of School District 49 officials as to how to not engage in discriminatory and retaliatory behavior. But School District 49 failed to do so.

75.     Because School District 49 created and tolerated a custom of deliberate indifference and has continuously failed, despite the obvious need to do so, to adequately train and supervise School District 49 officials in these areas, citizens whose children attend School District 49, including Mr. Brown and Ms. Gay, have repeatedly been subjected to violations of their constitutional rights.

76.      School District 49 fostered a policy of inaction in the face of knowledge that School District 49 officials were routinely violating specific constitutional rights, which constitutes the functional equivalent of a decision by School District 49 itself to violate the Constitution.

77.     School District 49's policy of inaction and policies, customs, or practices in failing to properly train and supervise its employees were a moving force and proximate cause of Defendants' violations of M.B.'s, Mr. Brown's, and Ms. Gay's constitutional rights.

78.     Moreover, upon information and belief, School District 49 persistently failed to meaningfully investigate and discipline School District 49 officials for their retaliatory and discriminatory conduct. School District 49's failure to find wrongdoing and failure to discipline officials in this case reflects a custom, policy, or practice of encouraging, tolerating and/or ratifying blatantly illegal and improper conduct. These encouragements, toleration, and ratifications demonstrate that such misconduct is carried out pursuant to the policies and training provided by School District 49, and that such conduct is customary within School District 49.

79.     Likewise, School District 49's deliberate and conscious failure to correct prior constitutional violations based on similar conduct constituted an affirmative choice to ratify the

conduct, and to send a clear message to its officials that such misconduct is acceptable and approved. It is School District 49's responsibility to properly train its officials to ensure they perform their duties correctly and to discipline, rather than ratify and encourage, their improper conduct, so that officials can learn from their mistakes and perform their jobs correctly moving forward, and be deterred from engaging in misconduct that violates the constitutional rights of people with whom they interact. School District 49's failure to do so has clearly communicated to School District 49 officials, including Defendants, that discrimination and retaliation is authorized and tacitly (and even explicitly) encouraged.

**School District 49 is liable for Defendants' violation of M.B.'s, Mr. Brown's, and Ms. Gay's rights.**

80.     Defendants' unlawful conduct, as set forth in detail herein, amounts to a custom and widespread practice so pervasive and well-established as to constitute a custom or usage with the force of law.

81.     Through School District 49's continuous ratification of discrimination and retaliation, School District 49 caused Defendants' illegal conduct.

82.     School District 49 knew or should have known that its acts or omissions in this regard were substantially certain to cause School District 49 officials to violate individuals' constitutional rights, and it consciously or deliberately chose to disregard this obvious risk of harm in adhering to its policy and custom of failing to provide additional or better training and supervision to School District 49 officials regarding how to not discriminate and retaliate.

83.     School District 49 was deliberately indifferent to M.B.'s, Mr. Brown's, and Ms. Gay's constitutional rights, because School District 49 knew that individuals in M.B.'s, Mr. Brown's, and Ms. Gay's positions would be at a substantial risk of suffering dangerous consequences from School District 49's failure to properly train and supervise its employees.

84.     School District 49 could have and should have pursued reasonable methods for the training and supervision of its officials, or discipling them if they engaged in misconduct, but intentionally chose not to do so.

85.     School District 49's acts or omissions caused M.B., Mr. Brown, and Ms. Gay's damages.

86.     School District 49's actions, as described herein, deprived M.B., Mr. Brown, and Ms. Gay of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 2000d – Title VI
### Race Discrimination
*Plaintiffs Brown and M.B. Against Defendant School District 49*

87.     Plaintiffs incorporate all other paragraphs of this Complaint as if set forth herein.

88.     Title VI provides that no person, on the grounds of race, color, or national origin, shall be excluded from participation, be denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance.

89.     Defendant School District 49 received federal financial assistance.

90.     Plaintiffs were the intended beneficiaries of that federal financial assistance.

91.     Defendant No. 49's officials and employees — including all named individual Defendants — discriminated and retaliated against Plaintiffs on the basis of their race, color, and/or national origin.

92.     Plaintiffs' race, color, and/or national origin was a motivating factor in Defendants' decision to retaliate against them, as described above. Defendants acted with the

intent or purpose of depriving Plaintiffs of the equal protection and benefits of the law, and equal privileges and immunities under the law.

93.     Plaintiffs were treated worse than similarly situated White counterparts.

94.     Defendants acted with discriminatory and retaliatory intent.

95.     Plaintiffs engaged in Title VI-protected activity by opposing unlawful discrimination and participating in investigations of discrimination.

96.     Plaintiffs were subjected to adverse treatment that would dissuade a reasonable person from engaging in Title VI-protected activity

97.     There was a causal connection between the Title VI-protected activity and the adverse treatment.

98.     Defendants' actions caused, directly and proximately, Plaintiffs to suffer damages. The actions of Defendants caused Plaintiffs' damages including that M.B. could not receive an equal education, free from racism, and M.B.'s parents were prevented from speaking freely on matters of public concern, including but not limited to School District 49's racism.

99.     Plaintiffs continue to be damaged by Defendants violations of their rights under Title IV.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment**
**Denial of Equal Protection**
*Plaintiffs Brown and M.B. Against All Defendants*

100.     Plaintiffs incorporate all other paragraphs of this Complaint as if set forth herein.

101.     At the time of the complained of events, Plaintiffs had the clearly established constitutional right to be free from racial discrimination and to enjoy the equal protection of the laws.

102.    Plaintiffs' race was a motivating factor in Defendants' decisions to discriminate and retaliate. Defendants acted with the intent or purpose of depriving Plaintiff of the equal protection and benefits of the law, and equal privileges and immunities under the law, in violation of the Fourteenth Amendment.

103.    Plaintiffs were treated worse than similarly situated White counterparts.

104.    Defendants acted with discriminatory and retaliatory intent.

105.    There was no rational basis for Defendants' discriminatory and retaliatory actions, let alone a purpose narrowly tailored to serve a compelling governmental interest.

106.    Defendants intentionally, willfully, unreasonably, and wantonly took retaliatory actions against Plaintiffs wholly or in part because of their race.

107.    Defendants' actions were objectively unreasonable considering the facts and circumstances confronting them.

108.    Defendants' actions were in accordance with Defendant School District 49's customs, policies, practices, and training.

109.    Defendant School District 49 has a custom, practice, and policy of tolerating violations of the First Amendment of the United States Constitution related to Plaintiffs.

110.    Defendant School District 49's customs, policies, and/or practices were the moving force behind Defendants' violations of Plaintiffs' constitutional rights.

111.    Final policymakers and/or those who had been delegated final policymaking authority for Defendant School District 49 authorized the actions that violated Plaintiffs' constitutional rights

112.    Defendants engaged in these actions or inactions intentionally, willfully, maliciously, and wantonly, showing deliberate indifference to and reckless disregard of Plaintiff's federally protected constitutional rights.

113.    Defendants' actions caused, directly and proximately, Plaintiffs to suffer damages. The actions of Defendants caused Plaintiffs' damages including that Plaintiffs were subjected to discriminatory and retaliatory treatment.

114.    Plaintiffs continue to be damaged by Defendant's violations of their rights.

**THIRD CLAIM FOR RELIEF**
**C.R.S. 24-34-601(2)**
**Discrimination in Places of Public Accommodation**
*Plaintiffs Brown and M.B. Against Defendant School District 49*

115.    Plaintiffs incorporate all other paragraphs of this Complaint as if set forth herein.

116.    Plaintiffs, as Black individuals, are members of a protected class.

117.    Schools in School District 49, including Remington Elementary and Horizon Middle School, are places of public accommodation.

118.    Plaintiffs sought goods, services, benefits, or privileges from Defendants. In particular, M.B. sought an equal education and M.B.'s parents sought to advocate for their child and more broadly without being restricted on the basis of their race.

119.    Defendants provide the goods, services, benefits, or privileges sought by Plaintiffs to similarly situated White counterparts.

120.    Defendants refused to provide Plaintiffs the goods, services, benefits, or privileges sought by Plaintiffs.

121.    The circumstances give rise to an inference of unlawful discrimination based on a protected class.

122.    Defendants' actions caused, directly and proximately, Plaintiffs to suffer damages. The actions of Defendants caused Plaintiffs' damages including that Plaintiffs were subjected to discriminatory and retaliatory treatment.

123.    Plaintiffs continue to be damaged by Defendant's violations of their rights.

**FOURTH CLAIM FOR RELIEF**
**C.R.S. 24-34-601(2.5)**
**Retaliation**
*Plaintiffs Brown and M.B. Against Defendant School District 49*

124.    Plaintiffs incorporate all other paragraphs of this Complaint as if set forth herein.

125.    Plaintiffs engaged in protected activity by opposing unlawful discrimination and participating in investigations of discrimination.

126.    Plaintiffs were subjected to adverse treatment that would dissuade a reasonable person from engaging in protected activity

127.    There was a causal connection between the protected activity and the adverse treatment.

128.    Defendants' actions caused, directly and proximately, Plaintiffs to suffer damages. The actions of Defendants caused Plaintiffs' damages including that Plaintiffs were subjected to discriminatory and retaliatory treatment.

129.    Plaintiffs continue to be damaged by Defendant's violations of their rights.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – First Amendment**
**Free Speech**
*Plaintiffs Brown and Gay Against*
*Defendants School District 49, Miller, Hilts, Horras, and MacArthur*

130.    Plaintiffs incorporate all other paragraphs of this Complaint as if set forth herein.

131.    Plaintiffs were engaged in First Amendment-protected speech as outlined above.

132.    Plaintiffs' speech was on a matters of public concern and did not violate any law.

133.    By taking the actions outlined above, Defendants chilled Plaintiffs from exercising their First Amendment rights.

134.    Defendants' actions in circumscribing Mr. Brown's ability to communicate with School District 49 personnel would chill a person of ordinary firmness from continuing to exercise their First Amendment rights.

135.    Defendants' actions in circumscribing Mr. Brown's ability to communicate with School District 49 personnel were a prior restraint on Plaintiff's speech.

136.    Defendants' actions were a content-and/or viewpoint-based restriction on Plaintiffs' speech.

137.    Plaintiffs' speech occurred in traditional public fora for free speech.

138.    Defendants failed to intervene to prevent other Defendants from violating Plaintiffs' First Amendment rights.

139.    Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

136.    Defendants' actions were in accordance with Defendant School District 49's customs, policies, practices, and training.

137.    Defendant School District 49 has a custom, practice, and policy of tolerating violations of the First Amendment of the United States Constitution related to Plaintiffs.

138.    Defendant School District 49's customs, policies, and/or practices were the moving force behind Defendants' violations of Plaintiffs' constitutional rights.

139.    Final policymakers and/or those who had been delegated final policymaking authority for Defendant School District 49 authorized the actions that violated Plaintiffs' constitutional rights.

140.     Defendants' actions and/or omissions caused, directly and proximately, Plaintiffs to suffer damages. The acts and inactions of Defendants caused Plaintiffs' damages in that they were prevented from speaking freely on matters of public concern, among other injuries, damages, and losses.

## SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment
### Right To Petition
*Plaintiffs Brown and Gay Against*
*Defendants School District 49, Miller, Hilts, Horras, and MacArthur*

141.     Plaintiffs incorporate all other paragraphs of this Complaint as if set forth herein.

142.     At all times relevant to this Complaint, Defendants were acting under the color of law.

143.     Plaintiffs were engaged in First Amendment-protected petitioning activity by directly emailing School District 49 officials, submitting a formal grievance to School District 49 officials, speaking about School District 49 school board meetings, and engaging directly with School District 49 personnel, including school board members.

144.     Plaintiffs petitioning activity was on a matters of public concern and did not violate any law.

145.     By taking the actions outlined above, Defendants chilled Plaintiffs from exercising their First Amendment rights.

146.     Defendants' actions in circumscribing Mr. Brown's ability to communicate with School District 49 personnel would chill a person of ordinary firmness from continuing to exercise their First Amendment rights.

147.     Defendants' actions in circumscribing Mr. Brown's ability to communicate with School District 49 personnel were a prior restraint on Plaintiff's speech.

148.    Defendants' actions were a content-and/or viewpoint-based restriction on Plaintiffs' petitioning activity.

149.    Plaintiffs' petitioning activity occurred at traditional public fora for free speech.

150.    Defendants failed to intervene to prevent other Defendants from violating Plaintiffs' First Amendment rights.

151.    Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

152.    Defendants' actions were in accordance with Defendant School District 49's customs, policies, practices, and training.

153.    Defendant School District 49 has a custom, practice, and policy of tolerating violations of the First Amendment of the United States Constitution related to Plaintiffs.

154.    Defendant School District 49's customs, policies, and/or practices were the moving force behind Defendants' violations of Plaintiffs' constitutional rights.

155.    Final policymakers and/or those who had been delegated final policymaking authority for Defendant School District 49 authorized the actions that violated Plaintiffs' constitutional rights.

156.    Defendants' actions and/or omissions caused, directly and proximately, Plaintiffs to suffer damages. The acts and inactions of Defendants caused Plaintiffs' damages in that they were prevented from speaking freely on matters of public concern, among other injuries, damages, and losses.

**SEVENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – First Amendment**
**Retaliation**
*Plaintiffs Brown and Gay Against*
*Defendants School District 49, Miller, Hilts, Horras, and MacArthur*

157.    Plaintiffs incorporate all other paragraphs of this Complaint as if set forth herein.

158.    At all times relevant to this Complaint, Defendants were acting under the color of law.

159.    Plaintiff was engaged in First Amendment-protected speech.

160.    Plaintiffs speech activity was on a matters of public concern and did not violate any law.

161.    Defendants responded to Plaintiff's First Amendment-protected activity with retaliation.

162.    Defendants' retaliatory actions were substantially motivated by Plaintiffs' exercise of his First Amendment rights.

163.    Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in First Amendment-protected activity.

164.    Defendants' conduct violated clearly established rights belonging to Plaintiffs of which reasonable persons in Defendants' position knew or should have known.

165.    Defendants failed to intervene to prevent other Defendants from violating Plaintiffs' First Amendment rights.

166.    Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiffs' constitutional rights.

167.    Defendants' actions were in accordance with Defendant School District 49's customs, policies, practices, and training.

168.    Defendant School District 49 has a custom, practice, and policy of tolerating violations of the First Amendment of the United States Constitution related to Plaintiffs.

169.    Defendant School District 49's customs, policies, and/or practices were the moving force behind Defendants' violations of Plaintiffs' constitutional rights.

170.    Final policymakers and/or those who had been delegated final policymaking authority for Defendant School District 49 authorized the actions that violated Plaintiffs' constitutional rights.

171.    Defendants' actions and/or omissions caused, directly and proximately, Plaintiffs to suffer damages. The acts and inactions of Defendants caused Plaintiffs' damages in that they were prevented from speaking freely on matters of public concern, among other injuries, damages, and losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against Defendants, and award all relief as allowed by law and equity, including, but not limited to the following:

a.  Declaratory relief and injunctive relief, as appropriate;

b.  Actual economic damages as established at trial;

c.  Compensatory damages;

d.  Non-economic damages;

e.  Punitive damages for all claims as allowed by law in an amount to be determined at trial;

f.  Issuance of an Order mandating appropriate equitable relief, including but not limited to:

    i.  Issuance of a formal written apology from each individual Defendant to Plaintiffs;

    ii.  The imposition of mandatory training within School District 49, designed to address future similar misconduct;

g.  Pre- and post-judgement interest at the highest lawful rate;

h.  Attorney's fees and costs;

i.  Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 26th day of November 2024.

NEWMAN | MCNULTY, LLC

*s/ Andy McNulty*
Mari Newman
Andy McNulty
Madeline Leibin
1490 N. Lafayette Street Suite 304
Denver, CO 80218
(720) 850 - 5770
mari@newman-mcnulty.com
andy@newman-mcnulty.com
madeline@newman-mcnulty.com

ATTORNEYS FOR PLAINTIFFS